**GRANITEVILLE COMPANY, SIBLEY DIVISION, Petitioner,**

v.

**EQUAL EMPLOYMENT OPPORTUNITY COMMISSION, Respondent.**

**Civ. A. No. 68–723.**

United States District Court,
D. South Carolina,
Aiken Division.

Oct. 1, 1969.

Julian B. Salley, Aiken, S. C., and William B. Paul, Atlanta, Ga., for petitioner.

David W. Zugschwerdt, Equal Employment Opportunity Commission, Washington, D. C., for respondent.

HEMPHILL, District Judge.

This is an action arising under the Equal Employment Opportunity Chapter, Title VII of the 1964 Civil Rights Act, 42 U.S.C.A. Sections 2000e *et seq.*, wherein the Equal Employment Opportunity Commission (hereinafter called Commission) made a "Demand for Access to Evidence" as contemplated by the Act[1] upon the Graniteville Company. Graniteville, (Petitioner herein) resisting, petitioned this court for relief from the demand pursuant to 42 U.S.C.A. Section 2000e–9(c).[2] This court has juris-

---

1. 42 U.S.C.A. § 2000e–8(c) provides:

   *Execution, retention, and preservation of records; reports to Commission; training program records; appropriate relief from regulation or order for undue hardship.*

   (c) Except as provided in subsection (d) of this section, every employer, employment agency, and labor organization subject to this subchapter shall (1) make and keep such records relevant to the determinations of whether unlawful employment practices have been or are being committed, (2) preserve such records for such periods, and (3) make such reports therefrom, as the Commission shall prescribe by regulation or order, after public hearing, as reasonable, necessary, or appropriate for the enforcement of this subchapter or the regulations or orders thereunder. The Commission shall, by regulation, require each employer, labor organization, and joint labor-management committee subject to this subchapter which controls an apprenticeship or other training program to maintain such records as are reasonably necessary to carry out the purpose of this subchapter, including, but not limited to, a list of applicants who wish to participate in such program, including the chronological order in which such applications were received, and shall furnish to the Commission, upon request, a detailed description of the manner in which persons are selected to participate in the apprenticeship or other training program. Any employer, employment agency, labor organization, or joint labor-management committee which believes that the application to it of any regulation or order issued under this section would result in undue hardship may (1) apply to the Commission for an exemption from the application of such regulation or order, or (2) bring a civil action in the United States District Court for the district where such records are kept. If the Commission or the court, as the case may be, finds that the application of the regulation or order to the employer, employment agency, or labor organization in question would impose an undue hardship, the Commission or the court, as the case may be, may grant appropriate relief.

2. 42 U.S.C.A. § 2000e–9(c) provides:

   *Petition for order to modify or set aside demand; specification of grounds; waiver of objections.*

   (c) Within twenty days after the service upon any person charged under section 2000e–5 of this title of a demand by the Commission for the production of documentary evidence or for permission to examine or to copy evidence in conformity with the provisions of section 2000e–8(a) of this title, such person may file in the district court of the United States for the judicial district in which he resides, is found, or transacts business, and serve upon the Commission a petition for an order of such court modifying or setting aside such demand. * * *

diction by virtue of the provisions of 42 U.S.C.A. Section 2000e–5(f)[3] and venue is properly laid in the District of South Carolina where petitioner transacts business and maintains its employment records.

Faced with procedural issues for which there exist no precedents, the court is forced to review, in part, the merits of the cause. This review neither decides those issues ordinarily for the Commission nor preempts its findings thereon. A limited inquiry is here necessary on the question of access. The facts are critical to the Commission's demand and petitioner's request. Not decided here is whether petitioner has violated Title VII of the Civil Rights Act of 1964.

Edward Price, the charging party, upon whose behalf the information in the demand was requested was an employee (from March 30, 1967 to May 23, 1968) of the Sibley Division of Graniteville Company in Augusta, Georgia. He was a doffer in the weave room. The undisputed testimony reveals that on May 23, 1968, Price voluntarily terminated that employment.

On February 9, 1968, Price wrote a letter to the Commission, at Washington, D. C., complaining of racial discrimination by the Graniteville's Sibley Division. The form of that letter, the spelling, and the language used therein indicates the letter was written by a person of limited education. As a follow-up to the letter, Price was visited by Roland Bessette, an employee-investigator of the Commission. Bessette prepared the formal charge which was signed by Price. The charge alleged essentially the same facts contained in Price's letter. On the same day Price signed a Commission form entitled *Charge of Discrimination.*[4] This form repeats the allegations of the other two documents. Basically, they are: (1) Negroes are discriminated against in promotion policies; (2) Negroes are harassed, placed in fear of job loss, and subjected to different conditions than white employees; (3) concession stands, locker and toilet facilities are segregated on the basis of race; (4) Negroes are hired for traditionally Negro jobs.

After filing the charge considerable communication took place between the Commission and petitioner's attorneys. Although not a part of the record, those events are set out in detail by petitioner's brief, and are not refuted by defendant:[5]

By letter dated April 29, 1968, Petitioner, through its counsel, advised the

---

3. 42 U.S.C.A. § 2000e–5(f) provides:
   *Jurisdiction and venue of United States courts.*
   (f) Each United States district court and each United States court of a place subject to the jurisdiction of the United States shall have jurisdiction of actions brought under this subchapter. Such an action may be brought in any judicial district in the State in which the unlawful employment practice is alleged to have been committed, in the judicial district in which the employment records relevant to such practice are maintained and administered, or in the judicial district in which the plaintiff would have worked but for the alleged unlawful employment practice * * *.

4. "The employment practices of my employer discriminate against Negroes within the meaning of Title VII of the Civil Rights Act of 1964. Negroes are hired to the traditional Negro jobs and regard-

less of length of service, Negroes are not promoted or considered for better jobs as are the white employees. We, the Negro employees, are harassed and subjected to different conditions than those afforded to white employees. We are placed in fear always of losing our employment; even the dining concession stands and the locker and toilet facilities are allowed to be segregated on the basis of race, as are the jobs and advancement opportunities. White employees are treated fairly in every instance. We, the Negroes, are consistently treated differently in every way coming within the meaning of Title VII of the Civil Rights Act of 1964. Even the EEOC posters are not conspicuously displayed."

5. The following narrative is not a part of the record as it was not submitted in the course of an evidentiary hearing. The portion of petitioner's brief in question is not essential in reaching a decision, nor

investigator that the Company was in the process of securing basic employment data and advised that it wished to determine what the allegations concerned and what information would be relevant in responding to the charge. Certain information requested by the investigator at the time of his interview with Company officials was prepared and forwarded through counsel by letter dated May 17, 1968, to which was attached a list of promotions of non-white and white employees for the period of one year preceding the filing of the charge, such evidence demonstrated that Negro employees in the Sibley Division received more promotions than did white employees, together with information requested concerning the Company's stated policy of providing equal employment opportunity to all its employees, and the Company's application form for hiring. In the letter enclosing this information, the investigator was specifically requested to provide information in order that it could refute any allegations that the charging party was allegedly denied any job opportunity or promotion. The identity of any Negro employees subjected to alleged harassment or different conditions or other matters pertaining to the facilities was likewise requested. The Company's response to the general allegations was to deny such general allegations and offer to demonstrate to the contrary with respect to any individual instance that could be cited to it. The Company received no response to this request that it be furnished with the particulars in order that it could more properly respond to the charge, in the event that the investigation had evidence of specific claims by Mr. Edward Price.

In a telephone conversation between the investigator and Petitioner's attorney, the investigator stated that he wished the Company to prepare informa-

tion demonstrating that its work force was integrated. In response to such request, the Company prepared and furnished to him on June 4, 1968, a "payroll breakout" indicating the department, job, shift, race, and sex of all employees in the Sibley Division. In response to Petitioner's request that it be furnished information with respect to Edward Price's unknown allegations as to any discrimination which he suffered with respect to his hiring or promotional opportunities, the investigator stated that he was aware of no specific allegations by Price of the denial of a job opportunity or promotion, either within the ninety (90) days preceding the filing of the charge, or any other time. He further stated he had no information as to the identity of other employees allegedly deprived of job opportunities, and that the charge was based on the "belief" of the charging party and his assumptions and observations.

Following receipt of the work force information, the investigator telephoned Petitioner's attorneys to request more specific information and again advised Petitioner's attorneys, at that time, that he was then aware of no facts to support Price's charge. The investigator was requested to again interview Price and determine if he had any specific complaint. Regardless of the lack of specificity, the Company agreed to provide the investigator with a list of those employed in the Weaving Department in which Price worked during his entire period of employment, which indicated their job, shift, employment date, race, and sex. A list of job classifications by number was furnished along with the payroll "breakout" in the Weaving Department. This information was forwarded by Petitioner's counsel by letter of June 28, 1968, and at the request of the investigator, forwarded a copy of a form required by the EEOC which dem-

did the court consider it in making its determination. The events preceding the Demand for Access were not explored at the hearing because they have no rele-

vance to the procedural issue raised in the present proceeding. They are, however, helpful in understanding how the parties arrived at the present impasse.

onstrated that of the 613 employees in the Sibley Division, 148 were Negro males or females.

Petitioner's counsel by letter of June 28 advised the investigator that it still had not learned of what alleged unfair act of discrimination Edward Price claimed occurred and when such alleged act could have occurred and reminded the investigator that the Company was entitled to an opportunity to present evidence refuting any charge against it, which is recognized by the Rules and Regulations of the Equal Employment Opportunity Commission, 29 CFR Part 1601.

Following the receipt of the requested information with respect to the department in which Price worked, the EEOC's investigator again orally requested the same information be provided for the entire work force consisting of over 600 employees, and again reiterated that he could identify no specific act of discrimination suffered by Mr. Price, but nonetheless stated that the information was necessary to the investigation.

By letter of July 12, 1968, Petitioner through its counsel pointed out that the information previously furnished went beyond the scope of reasonable inquiry and again repeated that the Company had been provided no information regarding claimed denials of employment opportunities which would permit it, as counsel, to advise its client concerning the relevancy of the information sought.

On or about July 24, 1968, the instant Demand for Access to Evidence was filed, based upon Mr. Price's charge, seeking the same information for the entire Sibley work force which the Company had furnished for employees in the department in which Mr. Price worked throughout the period of his employment, including, the date of hire of all such persons, and in addition requesting the job into which each of the more than 600 employees were originally hired, which had previously not been requested. In addition, the Demand requested unspecified documents reflecting information contained in the specific items in the Demand. Within the statutory period of the receipt of the Demand as provided by Section 710(c) of the Act, the Petition to Set Aside the Demand in the instant case was filed by the Petitioner.

As outlined above petitioner has already supplied the Commission with a great deal of information, especially employment data relating to Price's department. The Commission demanded additional information, consisting of virtually all petitioner's personnel information as to its entire Sibley Division. Petitioner refused, asserting that it has a right to be informed of the specifics of the discrimination with which it was charged and that in any case the Commission's investigation exceeded its authority. Upon being served with a "Demand of Access to Evidence" [6], Granite-

6. The "Demand for Access to Evidence," dated July 24, 1968, requested:

Pursuant to Section 709(a) of the Civil Rights Act of 1964, you are hereby required and directed to grant to Roland R. Bessette, a duly authorized representative of the Equal Employment Opportunity Commission, access to the following evidence in your possession or control for the purpose of examination and copying:

1. The key to the Code of the work force break out previously submitted to you to the representative of the Commission.

2. The date of hire of all employees listed on the above described work force break out who were hired after July 1, 1965.

3. The job into which each of the employees, listed in the above described work force break out, was hired.

4. Any additional documents in the custody of control of Respondent Sibley Division of the Graniteville Company, which reflect the information requested in this demand.

The evidence demanded herein must be produced or made available to Mr. Roland R. Bessette, Equal Employment Officer, designated by the Commission at the Atlanta Regional Office, 1776 Peachtree Street, N. W.,

ville petitioned for an order setting aside the demand, specifically upon the grounds that:

1. The charge upon which the demand is made is invalid because it does not set forth the facts upon which it is based as required by the statute and the Commission's own regulations.

2. The statutory standard which permits the Commission access only to evidence "relevant" to the charge under investigation cannot be applied because discrimination is not charged with requisite particularity or specificity.

3. The charge is invalid since it does not appear that Price is an aggrieved party or contemplated by Section 706(a) of the 1964 Civil Rights Act.

4. That compliance with the demand would be unduly burdensome.

Facing the court is the question of whether a general, unsupported, unsubstantiated charge entitles the Commission to make a general investigation of a company's records to ascertain whether or not there is a pattern of discrimination and thus a basis for a charge.

The Commission asserts that it is the judge of the relevancy of the information sought and of the validity and sufficiency of the charge and, further, that the charge is not the subject of judicial review at this point in the proceedings.[7] The Commission's position is contrary to the plain language of the statutory grant of investigatory authority, and the congressional purpose as revealed by legislative history, the statutory provisions for a Demand for Access to Evidence and judicial review thereof and finally the Commission's own regulations.

The statute in question was enacted in 1964[8]. Authority is sparse; it appears that the precise question raised in the case at bar has not been passed upon in any of the reported cases. Being without the guidance of precedent, the court looks to the legislative history.

The original Civil Rights Bill, approved by the House Judiciary Committee and passed by the House, provided for broad investigatory powers in Sections 709(a) and 710(c). The original version of 709(a) provided:

In connection with any investigation of a charge filed under Section 707 (the counterpart to the Section 706(a) in the present statute), the Commission or its designated representative may gather data regarding the practices of any person and may

Atlanta, Georgia on the 7th day of August, 1968 at 10:00 A.M.
Failure or refusal to comply with this demand may cause the Commission to take legal action to compel the compliance with this demand.

7. At page 8 of its brief the Commission asserted: "We do not believe, however, that a general attack on the underlying charge may be made in a demand proceeding."
Again at page 9:
"Finally, we respectfully submit that the questions of the sufficiency of the charge is not one which Congress intended to be subjected to a general review by the courts in cases of this kind. As noted above the Commission has established rules concerning the requirements of a charge. In every case, prior to assertion of jurisdiction over the case and the service of the charge upon the respondent, the charge is scrutinized to determine whether it meets the requirements of the statute and of the rules of the Commission. Here, manifestly the charge was, quite properly, deemed sufficient. Congress in giving the Commission the authority to accept charges necessarily gave the Commission the authority to determine whether the charge was sufficient to invoke the jurisdiction of the Agency. No where does the statute provide for any judicial review of the Commission's determination in this respect. Nor should the notion that such review is possible be imported into the statute."
It should be noted that the court does not purport to make a general review of the charge. The charge is analyzed only to the extent necessary for the court to discharge its statutory duty of review in a demand proceeding, infra.

8. The grant of the Commission's power to investigate: 42 U.S.C.A. 2000e–8, 9.

enter and inspect such places and such records (and make such transcriptions thereof), question such employees, and investigate such facts, conditions, practices, or matters as may be appropriate to *determine whether the respondent has committed or is committing an unlawful employment practice, or which may aid in the enforcement of this title*. [Emphasis added.]

Similarly, the scope of the investigatory powers specified in the original House version of Section 710(a) was broad:

For the purposes of any investigation provided for in this title, the provisions of Sections 9 and 10 of the Federal Trade Commission Act of September 16, 1914, as amended (15 USC 49, 50), are hereby made applicable to the jurisdiction, powers, and duties of the Commission except that the provisions of Section 307 of the Federal Power Commission Act shall apply with respect to grants of immunity and except that the attendance of a witness may not be required outside the state where he is found, resides, or transacts business, and the production of evidence may not be required outside the state where such evidence is kept.

Excerpts from the legislative history, taken from the Bureau of National Affairs, Inc., Washington, D. C., the Civil Rights Act of 1964, reveal the fate of the section dealing with the Commission's investigatory powers. This work was cited by Chief Judge Brown in Jenkins v. United Gas Corp., (5th Cir. 1968), 400 F.2d 28, as an "excellent, well organized compilation of materials with helpful commentary that portrays legislative history in its technical sense and equally in the historian's broader view of men, times, places and action."

When the Bill reached the floor of the Senate, the late Senator Dirksen challenged the scope of the Commission's power to investigate by addressing the following question to his colleague, Senator Clark, one of the floor managers of this Bill:

\* \* \* What protection is afforded to an employer from fishing expeditions by investigators in their zeal to enforce Title VII? Examiner Section 709(a) \* \* \* The Commission or its designated representative shall at all reasonable times have access to, for the purpose of examination, and the right to copy any evidence of any person being investigated or proceeded against that relates to any matter under investigation or in question. Can there be a greater grant of investigatory authority? I can recall none. Should the Commission be permitted to copy evidence? Should an employer be permitted to request detailed list of the records to be examined by the Commission? Should the employer be permitted to go before a competent court in order to determine what records relate to any matter under investigation or in question? Or are we to allow the Commission carte blanche authority in its examination, in its copying of evidence, in its inquiry? Should this examination be limited to specified documents? How broad can such inquiry be? It will be limited only by determination of the Commission. No private rights will remain.

Senator Clark (of Pennsylvania) responded:

\* \* \* The Commission should have the power to copy information from the records which it requires to be kept. It will specify by regulation what records must be kept and notify the employer which of those records it wishes to see. The employer is entitled to a day in court before the Commission inspects any records; he can contest the subpoena. Private rights will be amply protected by the courts.

Upon deliberation, the Senate revised the House version of those provisions of the Bill relating to the Commission's investigatory powers. The version of Section 709(c) (present 42 U.S.C.A. 2000e–

8(a)), limited the Commission's power to investigate as follows:

> Section 709(a). In connection with any investigation of a charge filed under Section 706, the Commission or its designated representative shall at all reasonable times have access to, for the purpose of examination, and the right to copy any evidence of any person being investigated or proceeded against that relates to *unlawful employment practices covered by this Title and is relevant to the charge under investigation.* [Emphasis added.]

The same standard relevance is adopted in the final version of 710(a), (present 42 U.S.C.A. 2000e–9(a)):

> Section 710(a). For the purposes of any investigation of a charge filed under the authority contained in Section 706, the Commission shall have authority to examine witnesses under oath and to require the production of documentary evidence *relevant or material to the charge under investigation.* [Emphasis added.]

The Dirksen-Humphrey Bill was substituted for the House Bill, accepted by the House and enacted into law. The substitute Bill was worked out by informal bi-partisan conferences and did not go through the normal committee procedure, so there is no Senate-House Conference Report on the Bill. Accordingly, the best guides to the legislative intent are the history of the Act and explanations offered during debate by Senators Dirksen and Humphrey. Senator Dirksen's explanation of the Commission's right to investigate is, in part, as follows:

> * * * This subsection (709(a)), which permits the Commission to examine and copy any evidence of a person being investigated that relates to any matter under investigation or in question, has been limited to the examination and copying of evidence which relates to unlawful employment practices covered by the title and is relevant to the charge under investigation.

Similarly, Senator Humphrey explained the Commission's power:

> The provisions for the investigative powers of the Commission have been entirely re-written * * *
>
> Section 710 narrows the powers originally given to the Commission in the House Bill and already possessed by the Federal Trade Commission and the Federal Power Commission.

■ The legislative history of the Act makes it clear that Congress intended to deny the Commission the broad investigatory powers of other federal agencies and to carefully circumscribe its authority of investigation. Hence, the Commission's contention that the charge, standing alone, empowers it to make a roving investigation to determine whether or not there be a basis in fact for the charge violates both the clear language of the statute and the intent of the Congress demonstrated by the Act's legislative history. Perhaps another court will expand the authority by judicial "legislation" but this court is bound by congressional limitation.

The statutory design for initiating Commission proceedings, demand for access and judicial review thereof are also contrary to the Commission's position that the charge is not subject to the limited judicial scrutiny necessary in the case at bar. Section 2000e–5(a)[9] Ti-

---

9. 42 U.S.C.A. § 2000e–5(a) provides:

Whenever it is charged in writing under oath by a person claiming to be aggrieved, or a written charge has been filed by a member of the Commission where he has reasonable cause to believe a violation of this subchapter has occurred (and such charge sets forth the facts upon which it is based) that an employer, employment agency, or labor organization has engaged in an unlawful employment practice, the Commission shall furnish such employer, employment agency, or labor organization (hereinafter referred to as the "respondent") with a copy of such charge and shall make an investigation of such charge, provided that such charge shall not be made public by the Commission. If the Commission shall determine, af-

tle 42 U.S.C.A. provides for the filing of a charge as a prerequisite for initiating Commission investigation.

■■ The statutory scheme of Title VII of the 1964 Civil Rights Act contemplates that the Commission make a demand for access to such evidence as might be the subject of such an investigation. 42 U.S.C.A. 2000e–8(a) and 42 U.S.C.A. 2000e–9(a)[10] define and limit the scope of the Commission's investigation and therefore that information which may properly be the subject of a demand. Section 2000e–9(c)[11] gives one upon whom a demand has been served the right to petition the court to set aside such demand. Likewise Section 2000e–9(b)[12] provides that the Commission may petition that the court order a person upon whom a demand has been served to comply therewith. The charge is necessary to initiate proceedings under Title VII and is the basis for the Commission's investigation. It is apparent that a valid charge is a prerequisite to jurisdiction under Title VII. As the charge is essentially related to the propriety of the demand and the demand is subject to judicial review, it necessarily follows that the charge must be reviewed to determine whether it is legally sufficient to sustain the demand for the evidence sought as within the scope of the Commission's investigatory authority.

■■ Congress explicitly gave those upon whom a demand for access to evidence has been served the right to petition to have the demand set aside. The question raised by that petition is whether the Commission has exceeded its statutory authority by the scope of its investigation. Since the Commission's sphere of permissible investigation is controlled by the relevancy of the information sought to the charge which has been lodged, the court must at least look to the charge to determine that which is relevant. The charge is the frame of reference which circumscribes the Commission's investigatory activities. Upon petition the court is obliged to determine what is charged and what is relevant.

ter such investigation, that there is reasonable cause to believe that the charge is true, the Commission shall endeavor to eliminate any such alleged unlawful employment practice by informal methods of conference, conciliation, and persuasion. Nothing said or done during and as a part of such endeavors may be made public by the Commission without the written consent of the parties, or used as evidence in a subsequent proceeding. Any officer or employee of the Commission, who shall make public in any manner whatever any information in violation of this subsection shall be deemed guilty of a misdemeanor and upon conviction thereof shall be fined not more than $1,000 or imprisoned not more than one year.

10. 42 U.S.C.A. § 2000e–9(a) provides:
For the purposes of any investigation of a charge filed under the authority contained in section 2000e–5 of this title, the Commission shall have authority to examine witnesses under oath and to require the production of documentary evidence relevant or material to the charge under investigation. Section 2000e–8(a) also applies the same standard of relevancy.

11. Supra.

12. 42 U.S.C.A. § 2000e–9(b) provides:
If the respondent named in a charge filed under section 2000e–5 of this title fails or refuses to comply with a demand of the Commission for permission to examine or to copy evidence inconformity with the provisions of section 2000e–8(a) of this title, or if any person required to comply with the provisions of section 2000e–8(c) or (d) of this title fails or refuses to do so, or if any person fails or refuses to comply with a demand by the Commission to give testimony under oath, the United States district court for the district in which such person is found, resides, or transacts business, shall, upon application of the Commission, have jurisdiction to issue to such person an order requiring him to comply with the provisions of section 2000e–8(c) or (d) of this title or to comply with the demand of the Commission, but the attendance of a witness may not be required outside the State where he is found, resides, or transacts business and the production of evidence may not be required outside the State where such evidence is kept.

As noted above, petitioner has supplied the Commission with thorough information regarding the weaving department where Price was employed and with some information about its entire work force at the Sibley Division. The Commission now demands additional information regarding the entire work force and petitioner, resisting, refused to make such information available lest it be apprised of the nature of the unlawful discrimination with which it is charged. Petitioner contends that the Commission's investigation exceeds the reasonable scope of its authority. That contention is sustained. In the case of Georgia Power Co. v. Equal Employment Opportunity Commission, D.C., 295 F. Supp. 950, as noted above concerned allegations of discriminatory hiring practices in two of Georgia Power's departments. The court in that case noted that the "statutory limitation is 'to require the production of documentary evidence *relevant or material* to the charge under investigation.'" The court went on to hold that the Commission's investigation should be limited to those two departments against whom grievance was addressed, noting that "there must be reasonable limitations as to time, space and scope" of the Commission's inquiry. The court in that case certainly did not recognize or create the right in the Commission to make a roving investigation to discover instances of discrimination which is asserted before this court. Congress never intended to place a shotgun in the hands of the Commission, to be loaded by surmise, aimed by suspicion, and fired in a scattergun hope to eliminate a possible discrimination. Due process would demand that there be some discipline and order. To preserve the discipline and order Congress enacted the safeguards written into the Act (42 U.S.C. 2000e–9(c)) "* * * such person may file in the district court of the United States * * * a petition for an order of such court modifying or setting aside such demand * * *." The obligation of the courts to police against hardship and harassment is clear.

This court agrees with the court in Georgia Power v. EEOC, supra, that there are limitations upon the scope of the Commission's power to investigate, and in fact the central question raised by the instant demand relates to the scope of that investigatory authority. The court further concludes that the charge, being essentially related to the issue of the scope of the investigation, is not immune to judicial scrutiny insofar as is necessary to determine whether the Commission has exceeded the scope of its authority.

This court, reviewing the file only for the purpose of deciding the issues raised by plaintiff's position examines the complaints of the *charge*:

## THE COMPLAINT OF SEGREGATED CONCESSION STANDS, LOCKER AND TOILET FACILITIES.

The allegation regarding segregated concession stands, locker and toilet facilities are treated individually and apart from the other charges. For it is distinguishable from the others because it is unrelated to the information sought in the Commission's Demand and is more factually concrete. From Price's testimony[13] it appears that there in reali-

---

13. Testimony of Price:
Q. Now, were you, mind you now, all these questions I am asking you, I am talking about you, Edward Price, were you ever kept out of the dining concession stand?
A. No.
Q. Were you ever kept out of the locker or toilet facilities? The locker or the toilet facilities at the company where you worked?

A. I didn't have a locker where I worked.
Q. Your charge says that you were kept out of the locker and toilet facilities or some people were. Do you claim you were ever kept out of a locker facility?
A. I wouldn't say I was ever kept out of a locker facility. We had our toilets and whatnot that we mostly share together.

ty is no company policy for segregated facilities, and such segregation as does exist is due to employee practices. If such segregated conditions exist in violation of Title VII, and are not corrected after Commission direction, upon petition to a court by those aggrieved, appropriate relief could be expected.

## II

## THE COMPLAINT THAT NEGROES ARE HIRED FOR TRADITION- ALLY NEGRO JOBS

The charge states that Negroes are hired for traditionally Negro jobs. It is difficult to understand how this constitutes discrimination. The only remedy, it seems, would be to refrain from hiring Negroes for traditionally Negro jobs, instead to hire white people for those jobs. Such a policy undoubtedly would be discriminatory as it would bar Negroes from certain jobs on the basis of race. The statute does not require integration of every sub-category or employment, but rather prohibits racial discrimination [14] in hiring practices. If it can be established that Negroes are hired only for certain jobs and, although qualified for others, are not considered for them, such would constitute discrimination. The charge, however, did not accuse petitioner of discrimination against Negroes in the hiring for certain positions as was the case in Georgia Power Co. v. Equal Employment Opportunity Commission, 295 F.Supp. 950 (Ga.N.D. 1968).[15] In *Georgia Power Company* the

aggrieved party had applied for positions in two departments and was denied employment. She charged discriminatory hiring practices in regard to those two positions and the Commission's demand for data was limited to the two departments involved in the charge. In Logan v. General Fire-Proofing Co., 309 F.Supp. 1096 (W.D.N.C.1969), plaintiff charged that defendant racially discriminated in its hiring practices. In *Logan* the aggrieved party had also applied for a job and been refused, apparently due to defendant's policy of discriminatory hiring. The similarity between *Logan* and *Georgia Power*, and the fact which distinguishes them from the instant case, is that in both of those cases someone had actually applied for a job and been declined employment under circumstances which suggested racial discrimination, and thereafter proceedings were instituted under Title VII. Here Price was hired for the position he sought. As will more fully appear below, neither the charge of discrimination nor the supporting documents, Price's letter and statement, alleged a basis upon which a charge of discrimination in petitioner's hiring practices could be grounded.

This court will assume that when Price alleged that Negroes are hired for traditionally Negro jobs that he is complaining of petitioner's promotion policy in that Negroes are hired for certain menial jobs and are not considered for promotion to better jobs. Such is the clear import of Price's letter, statement

Q. Let's talk about toilets. Were you ever kept out of a toilet?
A. No, sir, we had our separate toilets that we shared together.
Q. Did anybody in the company tell you to use this one instead of another one, that you couldn't use another one?
A. No, not in words, but you get the expression.
Q. How do you claim you were kept out?
A. Well, you didn't ever see anyone using them. I didn't ever use them.
Q. Did you ever try to use one?
A. No, I felt I would get the runaround if I had, and that is why I didn't use them.

14. 42 U.S.C.A. § 2000e–2. *Unlawful employment practices—Employer practices.*
(a) It shall be an unlawful employment practice for an employer—(1) to fail or refuse to hire or to discharge any individual, or otherwise to discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's race, color, religion, sex, or national origin.

15. Cited in the Commission's brief. At this writing the case, if reported, has not been catalogued and indexed.

and the charge of discrimination. The charge states, "Negroes are hired to the traditional Negro jobs and regardless of length of service, Negroes are not promoted or considered for better jobs as are the white employees." Despite the complaint as to petitioner's hiring practices, the thrust of the charge relates to discriminatory promotional policies, hereinafter treated.

### III and IV

### THE COMPLAINT STATES THAT DISCRIMINATION EXISTS IN THE AREA OF PROMOTIONS AND "OTHER" CONDITIONS.

The charging party, Price, stated that Negroes were discriminated against in regard to promotions, and other general conditions. No specifics were given. A hearing was held to resolve whether the party was aggrieved, in order to determine the merits of the Commission's exploratory demand. Necessarily, this involves a delineation between a fact and a conclusion. The nature of his grievances become paramount. If in fact there exists a grievance, the Commission may well conclude that his grievance represents a practice or policy in all departments. The Commission may then pursue the charge with a demand for information relevant to the grievances charged. If there exists only a conclusion that a grievance exists, without substantiating facts, a demand for blanket information becomes a fishing expedition not sanctioned by the statute(s).

Price alleged that Negro employees were harassed but when questioned could not name a single instance of harassment. He likewise alleged discrimination against Negroes in the company's promotion policies and practices; again he could not specify a single instance in which he or any other Negro employee was denied promotion because of race. Similarly, the allegations concerning "different conditions" to which Negroes were subject were not substantiated by specific factual occurrences. Upon examination, Price could not detail any specific fact, circumstance or occur-

rence upon which his charges might be founded. When questioned in regard to each allegation of discrimination contained in the charges Price always returned to the complaint that Negroes are hired for traditionally Negro jobs. He could not, did not, offer any evidence to support his complaint/charge.

Illustrating the nebulous character of his accusations against the company is this excerpt from his testimony:

"Q. Did you make known in any way to the management of the company that you were interested about a job or that you would like to have a job that you didn't have?

A. Well, see, a man had worked for the company 11 months, and during my tour of duty while I was with the company, I wasn't absent any days, and it seems like to me if there was any opening they could have come to me and give me a promotion without my having to ask. If the company was interested enough in me to have wanted me to move up for promotion.

Q. I want to get the record clear. You did not make it known yourself to anybody in the company that you were interested in some of these jobs. That is correct, isn't it?

A. That is correct.

\*    \*    \*    \*    \*    \*

Q. (By Mr. Paul) All right, Mr. Price, I am talking about you, were you harassed, what you call harassed, by any official of this company while you worked there, and if so, how? How do you claim you were harassed?

A. Well, I might say that I was harassed by not getting the jobs that came open in the department of the Sibley Division. That is one of the ways I could have been harassed.

\*    \*    \*    \*    \*    \*

Q. And that is where you claim you were harassed?

A. That is right.

Q. Even though you had not ever made known any interest in those jobs to the company?

A. Correct.

Q. Now, when did this occur, Mr. Price?

A. Well, it happened during the whole while I was employed at the Graniteville Company.

Q. Every day?

A. Well, every day whenever they would hire some one.

Q. And this is what you concluded to be your harassment?

A. That is correct.

\*   \*   \*   \*   \*   \*

Q. \* \* \* Now, your charge also shows a question here: "Explain what unfair thing was done to you." Now, Mr. Price, what unfair thing do you claim was done to you while you worked at Graniteville, to you?

A. The unfair things that were done to me while I worked at Graniteville, as I said jobs came open, and I didn't receive any of the jobs. In several departments, not only the Weave Room, but the various parts, openings on different type jobs, and I was never offered a job, and I think that was very unfair since I was employed with the company, by the company, and for the company.

Q. So the unfair thing you claim was that people didn't come to you and offer you jobs, or offer you transfers, or offer you use of various facilities, is that correct?

A. That is right.

Q. But you didn't seek any of these things yourself?

A. No, sir, because I felt it wouldn't be necessary.

It further appears the position taken by the Commission before this court is contrary to the regulations promulgated by the Commission itself. The rules of the Commission respecting charges are set forth at 29 CFR 1601.11 which provides that each charge contain, among other things, "(1) the full name and address of the person making the charge (2) the full name and address of the person against whom the charge is made

(3) a clear and concise statement of the *facts* [emphasis added], including pertinent dates, constituting the alleged unlawful employment practice."

The Commission's regulations, as well as the plain language of the statute and the congressional purpose as revealed by the Act's legislative history contemplate a charge based upon some occurrence or incident, some fact, of unlawful discrimination. Such a rule would seem reasonable, for one being called upon to account for his acts deserves to be apprised of what conduct for which he is being questioned. It appears clear that there should be some specific charge and that the scope of the investigation should be limited by that charge. The mere allegation of discrimination is not sufficient, especially when, as here, an examination of the aggrieved party plainly shows that there are no specifics which can be pointed to as a basis for the charge. Surely the court is empowered to delve into the matter to this limited extent in determining what in fact has been charged and whether the charge of discrimination is meritorious or merely a sham. Moreover, in light of the limitations sought to be placed upon the *scope* of the Commission's authority to investigate, and since the *scope* of investigation is determined by the charge, it is imperative that the court determine the nature of the grievance when the charge, as here, is so broadly drawn. The mere allegation of discrimination without substance is insufficient to invoke the Commission's investigatory powers. There must be some basis in fact for the charge before the Commission be empowered with the authority to investigate. To hold otherwise would be to put the cart before the horse. The Congress specifically denied the Commission the right to make a roving investigation in order to find discrimination. It intentionally limited the scope of the Commission's power to investigate and imposed stricter confines upon the Commission's power than has been bestowed upon other federal regulatory agencies. This court cannot and

will not give that which the Congress specifically denied.

There are two additional reasons why the Commission insists equation of its powers of investigation to those of other administration agencies, such as the National Labor Relations Board, Federal Trade Commission and Securities and Exchange Commission, is spurious. As noted in Jenkins v. United Gas Corp., supra. "The legislative compromise changed the concept from an enforcing —adjudicatory administrative agency to one in which the agency would conciliate, leaving the ultimate, final sanction to be judicial enforcement." Such judicial enforcement is committed to the hands of the aggrieved individuals. The Act bestows upon the Commission as its tools for enforcement, voluntary conference, persuasion and conciliation. So the Commission is not a regulatory body in the Tradition of the Federal Trade Commission, National Labor Relations Board or Securities and Exchange Commission and should not be supposed to possess the same broad powers of investigation of those administrative agencies.

Further buttressing this conclusion is the difference in the statutory language between the Commission's grant of investigatory power and that of other agencies. Section 15 U.S.C.A. § 49 contains Federal Trade Commission's power of investigation which is broad, including " * * * the right to copy *any documentary evidence of any corporation being investigated* or proceeded against [emphasis added] * * * and * * * the power to require * * * the production of all such documentary evidence relating to any matter under investigation." The original House version of Section 710(a) gave the Commission this same broad power of investigation: "For the purposes of any investigation provided for in this title, the provisions of Sections 9 and 10 of the Federal Trade Commission Act of 1914, as amended (15 U.S.C. 49, 50), are hereby made applicable to the jurisdiction, powers, and duties of the Commission * * *." As noted above this provision was unacceptable to the Senate and was deleted. By contrast, the substituted provision, finally enacted [16], limited the Commission's investigation to matters relevant or material to the charge under investigation.

Moreover the scheme of the Act must be determined by reading the various provisions together. The limitation that only matters relevant and material to the charge may be investigated must be read together with Section 706(a), 42 U.S.C.A. 2000e–5(a), which requires that the charge "set forth the facts upon which it is based." Thus the legislative history and the provisions of Title VII make it clear that Congress intended to prevent the EEOC from engaging in precisely this type of fishing expedition.

The Commission relies upon Jenkins v. United Gas, supra, as authority for the position that Price's charge acts as a catalyst, authorizing it to "launch a full scale inquiry into the charged unlawful motivation in employment practices" [quoting from *Jenkins*]. The *Jenkins* case is inapposite. The court in *Jenkins* said, in regard to the requirements for sufficiency of the charge, "all that is required is that it give sufficient information to enable the EEOC to see what the grievance is about." Although the court stated it "need not determine * * * what the charge must specifically allege," the charge was set out in full and is a model of specificity. In that case the charge alleged, "discrimination based upon race [Negro] in that caucasians have been transferred into the Service Department and promoted to Servicemen, while he and other Negroes remained Helpers, although qualified to be Servicemen." When compared to the charge in *Jenkins*, Price's vague allegations are not equivalent to the "charged unlawful employment practice" with which that case was concerned.

16. The sovereign will is made known to us by legislative enactment. Wheeler v. Smith, 50 U.S. (9 Haw.) 55, 78, 13 L.Ed. 44 (1850).

■ Moreover, it does not appear that plaintiff has standing to commence proceedings by the Commission under Title VII of the 1964 Civil Rights Act. Section 42 U.S.C.A. 2000e–5(a) provides that charges may be brought by a person claiming to be aggrieved, thereby initiating Commission action under Title VII. Thus the Act contemplates a charge made by an aggrieved person. The charge in the case at bar does not reveal any particulars in which Price was aggrieved and the Commission never informed petitioner of the specifics of the charge. Nevertheless, petitioner made available all relevant data concerning Price's department. The Commission, still unsatisfied and still refusing to reveal the specifics upon which the charge was based, demanded additional information about the entire work force of the Sibley Division. Petitioner refused and petitioned this court to set aside the "Demand for Access." A hearing was held at which Price appeared and testified. His testimony clearly reveals that the charge is baseless. Price could give no reason, no facts which indicated that he or the class which he purports to represent has been discriminated against or subjected to unfair employment practices within the meaning of the Act. So it is clear that Price is not a person aggrieved within the design of Title VII.

Price worked for petitioner only 11 months. During that time, by his own statement, he never sought promotion to a position which was denied him on the basis of his race. Eleven months is too short a time to raise the presumption that Price was confined to his position as a cloth doffer and refused consideration for promotion to another job due to his race. Price's testimony at the hearing appropriately demonstrated that he was not the victim of any employment practice within the prohibition of Title VII. Hence, Price is not an aggrieved person as contemplated by the Act. Price then has no standing to initiate Commission activity under the Act.

■ The Commission asserts the right, based upon Price's charge, to investigate other unspecified acts of discrimination against other unspecified persons whom Price represents. In other words, the Commission seeks to treat this as a class action under Rule 23(a), with Price representing the class composed of other Negroes discriminated against by petitioner. Thus, the reasoning goes, the investigation is not confined to acts of discrimination against Price and such is the basis for the Commission's demand for information concerning the entire plant. Without considering whether there is a question of fact common to all members of the purported class, this court concludes that Price is not the proper representative of the class which he seeks to represent. As stated by the court in Oatis et al. v. Crown Zellerbach Corp., 398 F.2d 496 (5th Cir. 1968), "the issues that may be raised by plaintiff in such a class action are those issues that he has standing to raise (*i. e.*, the issues as to which he is aggrieved, see § 706(a), *supra*), and that he has raised in the charge filed with the EEOC." So he who undertakes to represent a class must be a member thereof. See also Colbert v. H–K Corp., 295 F.Supp. 1091 (Ga.N.C.1968). It being shown that Price is not an aggrieved person within the meaning of Title VII, he has no standing to initiate proceedings under the Act for himself or for the class which he purports to represent.

## CONCLUSION

For the reasons hereinabove stated the petition of Graniteville Company (Sibley Division) to set aside the Commission's Demand for Access to Evidence (dated July 24, 1968) is granted; the demand is set aside.

This decision does not preempt the Commission in its findings on the merits.

And it is so ordered.