**GRANITEVILLE COMPANY (SIBLEY DIVISION), Appellee,**

v.

**EQUAL EMPLOYMENT OPPORTUNITY COMMISSION, Appellant.**

**No. 14012.**

United States Court of Appeals, Fourth Circuit.

Argued June 3, 1970.

Decided Feb. 5, 1971.

Boreman, Circuit Judge, dissented and filed opinion.

David W. Zugschwerdt, Atty., Equal Employment Opportunity Commission

(Russell Specter, Acting Gen. Counsel, Equal Employment Opportunity Commission, on brief), for appellant.

William B. Paul, Atlanta, Ga. (James F. Smith, J. Lewis Sapp, and Constangy & Prowell, Atlanta, Ga., Julian B. Salley, Jr., and Henderson, Salley, Cushman & Bodenheimer, Aiken, S. C., on brief), for appellee.

Before SOBELOFF, BOREMAN and CRAVEN, Circuit Judges.

SOBELOFF, Circuit Judge:

This case arises under Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e et seq. Appellee Graniteville Company, Sibley Division, petitioned the District Court to set aside a "Demand for Access to Evidence" served by the Equal Employment Opportunity Commission (EEOC). The Commission cross-petitioned for enforcement of its Demand and now appeals from the Order, 316 F.Supp. 1177, setting the Demand aside.

On February 12, 1968, the EEOC received an unsworn charge of discrimination against Graniteville from Edward Price and James C. Walker, two Negro employees of the company's Sibley Division in Augusta, Georgia. A formal, sworn charge was perfected on March 26, 1968, by Price with the assistance of an Equal Employment Opportunity Officer. In substance that charge alleged that (1) Negroes are discriminated against in promotion policies; (2) Negroes are harassed, placed in fear of job loss, and subjected to different conditions than white employees; (3) concession stands, locker and toilet facilities are segregated on the basis of race; (4) Negroes are hired for traditionally Negro jobs.[1]

---

1. The substantive portion of Price's sworn charge reads:

The employment practices of my employer discriminates against Negroes within the meaning of Title VII of the Civil Rights Act of 1964. Negroes are hired to the traditional Negro jobs and regardless of length of service, Negroes are not promoted or considered for better jobs as are the white employees.

The EEOC undertook an investigation of Price's charge and requested Graniteville to make available certain documentary materials. Much of the evidence sought was supplied over the next several months. By a letter dated July 12, 1968, however, Graniteville declined to supply further information requested by the EEOC. The Commission then served Graniteville with a Demand for Access to Evidence seeking three items of documentary evidence: (1) the key to a number code indicating the department and job classification assignments of all employees of the Sibley Mill as used in a computer list supplied to the EEOC on June 4, 1968; (2) a list showing the date of hire of all employees on the computer list hired subsequent to July 1, 1965; (3) a list showing the job into which each employee on the computer list had been initially hired at the Sibley Mill.

The response of the company was to file a Petition to Set Aside the Demand.[2] After the EEOC cross-petitioned for enforcement, the court held several hearings on the petitions, requiring Price and his attorney to be present at the last hearing in order that the court might determine whether he was "aggrieved" in the terms of the Act. Price's attendance was required by the court over the objection of the EEOC. The court granted the Petition to Set Aside the Demand on the grounds that (1) Price is not a person claiming to be aggrieved under the Act and therefore does not have standing to initiate Commission proceedings, (2) the charge was invalid for failure to set forth the facts upon which it was based, and (3) the in-

formation sought by the EEOC was beyond the scope of the Commission's investigatory powers and irrelevant to the investigation of the charge. Disagreeing with these conclusions, we reverse and remand.

## I.

### *Standing to Initiate Commission Proceedings*

■ Graniteville argues, and the court below held, that Price is not an aggrieved party because he did not reveal any particular manner in which he personally was aggrieved. Yet his charge filed with the EEOC indicates that he has been discriminated against because of his race, that the company maintains racial classifications of jobs, fails to promote members of Price's race or give them the consideration for better jobs that white employees receive, and that members of his race are harassed, placed in fear of losing employment, and relegated to the use of segregated concession stands and locker and toilet facilities. These allegations are more than sufficient to establish standing in Price to initiate Commission proceedings.

### A. *Standards for a Valid Charge*

■ We do not deny the proposition put forth by Graniteville that the EEOC is without jurisdiction to proceed in the absence of a valid charge. See Equal Employment Opportunity Commission v. Union Bank, 408 F.2d 867 (9th Cir. 1969). However, the statute quite clearly requires only that a charge be filed "by a person *claiming* to be aggrieved" by an employer, employment agency, or

---

We, the Negro employees, are harassed and subjected to different conditions than those afforded to white employees. We are placed in fear always of losing our employment; even the dining concession stands and the locker and toilet facilities are allowed to be segregated on the basis of race, as are the jobs and advancement opportunities. White employees are treated fairly in every instance. We, the Negroes, are consistently treated differently in every way coming within the meaning of

Title VII of the Civil Rights Act of 1964. Even the EEOC posters are not conspicuously displayed.

2. Graniteville elected to exercise its option under the venue provisions of Section 706(f) of Title VII, 42 U.S.C. § 2000e–5(f), to file the petition in the district where the employment records were maintained rather than where the unlawful employment practices were alleged to have occurred.

labor organization engaged in an unlawful employment practice, 42 U.S.C. § 2000e–5 (emphasis added). When an individual fills out an EEOC form entitled "Charge of Discrimination," checks a box indicating discrimination because of "Race or Color," names a respondent in answer to the question "Who discriminated against you?", indicates "The most recent date on which this discrimination took place," and alleges the existence of racially discriminatory employment practices in response to the instruction "Explain what unfair thing was done to you," we think it plain enough that he is claiming to be aggrieved within the statutory meaning of Title VII.

■ The EEOC is correct in its position that, in the context of Demand enforcement proceedings, "Title VII contains no provision authorizing a general inquiry into the sufficiency of the evidence supporting a charge," as the court below undertook in this case. The EEOC in its investigation is seeking only to determine the existence of *reasonable cause* to believe that the charge is true. *See* 42 U.S.C. § 2000e–5(a). In conducting hearings into the aggrieved status of the charging party the court required the EEOC to make a reasonable cause showing as a prerequisite to enforcement of the Commission Demand issued in the course of an investigation designed to determine the existence of reasonable cause. That is not only to place the cart before the horse, but to substitute a different driver for the one appointed by Congress. The statutory standard to be applied in a Demand enforcement proceeding is one of relevancy and materiality, not one of reasonable cause to believe the charge is true. 42 U.S.C. § 2000e–9(a).

Such judicial hearings into the merits of the charging party's allegations also frustrate congressional intent by entailing extensive delay in the disposition of Title VII cases. We have previously noted that there can be no doubt "that Congress intended the remedies provided to be timely and effective." Johnson v. Seaboard Air Line Railroad Company, 405 F.2d 645, 651 (4th Cir. 1968). More than a year elapsed between the filing of Graniteville's petition and the granting of the Order setting aside the Demand for Evidence. Such delays are clearly to be avoided if possible and are not justified by examinations into the aggrieved status of the charging party during Demand enforcement proceedings.

B. *The Title VII "Aggrieved" Party*

The court also erred in holding that Price was not claiming to be aggrieved because his charge did not "reveal any particulars" in which he was aggrieved. Employer unlawful employment practices include discrimination on the basis of race "against any individual with respect to his compensation, terms, conditions, or privileges of employment" and classifying employees on the basis of race "in any way which would deprive or tend to deprive any individual of employment opportunities or otherwise adversely affect his status as an employee." [3]

If, as alleged, Graniteville discriminates on the basis of race in making job assignments, promoting employees, and operating the facilities it provides for the benefit of its employees, Price unquestionably is being classified in a manner and subjected to terms and conditions of employment which violate the

3. 42 U.S.C. § 2000e–2(a):

It shall be an unlawful employment practice for an employer—
    (1) to fail or refuse to hire or to discharge any individual, or otherwise to discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's race, color, religion, sex, or national origin; or

    (2) to limit, segregate, or classify his employees in any way which would deprive or tend to deprive any individual of employment opportunities or otherwise adversely affect his status as an employee, because of such individual's race, color, religion, sex, or national origin.

prohibitions of Title VII. Proof of the allegations contained in Price's charge would as effectively establish violations of the Act and affirm Price's status as an aggrieved party as if the alleged practices were written into Price's employment contract as avowed terms and conditions of employment. Judge Gray of the Middle District of Tennessee expressed the controlling principle well in Hall v. Werthan Bag Corp., 251 F.Supp. 184, 186 (M.D.Tenn.1966):

> Racial discrimination is by definition a class discrimination. If it exists, it applies throughout the class. This does not mean, however, that the effects of the discrimination will always be felt equally by all the members of the racial class. * * * But although the actual effects of a discriminatory policy may thus vary throughout the class, the existence of the discriminatory policy threatens the entire class. And whether the Damoclean threat of a racially discriminatory policy hangs over the racial class is a question of fact common to all the members of the class.

■ It is for just this reason that a Title VII suit alleging a discriminatory promotion policy is not mooted by the plaintiff's acceptance of a promotion from the defendant subsequent to filing suit. Jenkins v. United Gas Corp., 400 F.2d 28 (5th Cir. 1968). Noting that under the Title VII structure enforcement of nondiscrimination in employment is left largely to private action, the Fifth Circuit rejected the mootness argument on the grounds that "[w]hether in name or not, the suit is perforce a sort of class action for fellow employees similarly situated." *Id.* at 33. The logic of that decision is pertinent here. Under Graniteville's reasoning the party would no longer be aggrieved after accepting the promotion, would no longer have standing to file a charge with the EEOC, and therefore would no longer be entitled to maintain a Title VII suit against his employer.

We also take note of the Fifth Circuit's holding that a charging party may even be aggrieved by employment practices to which he is not immediately subject. Carr v. Conoco Plastics, Inc., 423 F.2d 57 (5th Cir. 1970), aff'g on the opinion of the District Court, 295 F. Supp. 1281 (N.D.Miss.1969); cf. Cypress v. Newport News General Hospital Ass'n, 375 F.2d 648 (4th Cir. 1967). In *Carr* the court upheld the standing of plaintiffs, allegedly denied employment with the defendant because of their race, to challenge such alleged internal policies of the defendant as racial classification of jobs and segregation of facilities. The allegation by Price in the case at hand that he personally and the class he represents are subject to defendant's discriminatory employment policy is more than sufficient to establish his standing to initiate EEOC proceedings though he makes no claim that the policy has been applied to him in a specific instance.

## II.

### *Specificity of the Charge*

■ Section 706(a), 42 U.S.C. § 2000e–5(a), provides in pertinent part:

> Whenever it is charged in writing under oath by a person claiming to be aggrieved, * * * (and such charge sets forth the facts upon which it is based) that an employer * * * has engaged in an unlawful employment practice, the Commission shall * * * make an investigation of such charge * * *.

Graniteville contends that the charge in this case is deficient in setting forth the facts upon which it is based since it "contains no names, incidents, dates, jobs, places or related information." The error in this construction of the statute is best revealed by examining the role of the charge in Title VII proceedings.

Charges are filed with the EEOC by lay-complainants who are unfamiliar with the niceties of pleading, and nearly always are without the assistance of counsel. The Commission then sets about a nonadversary investigation (in

which respondents are encouraged to submit whatever evidence and arguments they regard as relevant) in an effort to determine only whether reasonable cause exists to believe that the charge is true. Having reached a finding of reasonable cause, the EEOC still is without authority to take any action against the respondent and is empowered only to "endeavor to eliminate any such alleged unlawful employment practice by informal methods of conference, conciliation, and persuasion." 42 U.S.C. § 2000e–5(a). If the respondent will not be conferred with, conciliated, or persuaded, the EEOC has no more role to play and the charging party is left to his own devices in the federal courts.

The purpose of the charge under section 706 is only to initiate the EEOC investigation, not to state sufficient facts to make out a prima facie case. The parenthetical clause in section 706(a) only requires a sufficient allegation to give the EEOC notice of what it is to investigate and put the respondent on notice of the practice or violation with which it is charged.

The scope of prohibited practices under Title VII is broad. The section 706(a) requirement that charges state the facts on which they are based must accordingly be given a flexible interpretation as applied to allegations of different unlawful employment practices. If a charging party is alleging a specific incident as a violation of Title VII, such as denial of a requested promotion or the termination of his employment, it may be appropriate to require some degree of specificity of the charge's allegations. However, sophisticated general policies

and practices of discrimination are not susceptible to such precise delineation by a layman who is in no position to carry out a full-fledged investigation himself. If a respondent employer's policy is to initiate promotions without requiring applications from its employees, there may be no specific denial of promotion that an aggrieved charging party can point to. Long observation of plant practice may bring the realization that he and his black coemployees are not getting anywhere. Charging parties in such cases should not be called upon to specify the dates when raises should have been granted or when promotions were offered to whites but not to equally qualified blacks. This is precisely the type of information that the EEOC was empowered to ascertain from company records by utilization of its subpoena powers under sections 709 [4] and 710 [5]. To require the charging party to develop that evidence himself before filing a charge would be tantamount to requiring a prima facie case as an element of the initial charge, thus altering the nature of the EEOC investigation. This is a plain distortion of the roles prescribed by Congress for the charging party and the EEOC.

The allegations of Price's charge are quite sufficient to inform the EEOC of what practices it is to investigate and notify the respondent of the alleged practices it will be called upon to defend. The charge does not simply allege in conclusory terms the existence of Title VII violations, but specifies the existence of a discriminatory promotion policy, racially classified jobs, and specific segre-

---

4. Section 709(a), 42 U.S.C. § 2000e–8(a):
   (a) In connection with any investigation of a charge filed under section 2000e–5, the Commission or its designated representative shall at all reasonable times have access to, for the purposes of examination, and the right to copy any evidence of any person being investigated or proceeded against that relates to unlawful employment practices covered by this subchapter and is relevant to the charge under investigation.

5. Section 710(a), 42 U.S.C. § 2000e–9(a):
   (a) For the purposes of any investigation of a charge filed under the authority contained in section 2000e–5 of this title, the Commission shall have authority to examine witnesses under oath and to require the production of documentary evidence relevant or material to the charge under investigation.

gated facilities. The law requires no more.

The Sixth Circuit has recently given the specificity provision of section 706(a) the same interpretation we do. *Bowaters Southern Paper Corp. v. Equal Employment Opportunity Commission,* 428 F.2d 799 (6th Cir. 1970), involved a Demand enforcement proceeding pursuant to the investigation of a charge filed by an EEOC Commissioner.[6] Commissioner's charges, like those of private complainants, are subject to the section 706(a) requirement that they set forth the facts on which they are based. In terms of degree of specificity, the charge in *Bowaters* cannot be distinguished from the charge filed by Price. The *Bowaters* charge read:

> I have reasonable cause to believe said company is within jurisdiction of the Equal Employment Opportunity Commission and has engaged in the following unlawful employment practices:
>
> 1. Maintenance of racially restricted job classifications.
>
> 2. Discriminatory use of tests, restricting Negro employees to lower paying jobs.
>
> 3. Denial to Negro employees of opportunity to participate in apprenticeship and on-the-job training programs.

*Id.* at 800.

In response to the argument that this charge was not sufficiently specific, the court stated, "In fact, it is difficult to see what additional information the Commissioner should set forth as facts supporting his charge." *Id.* at 800. We concur and note as well that if the argument of Graniteville and the Bowaters Southern Paper Corporation were accepted, charges initiating EEOC investigations would be held to a significantly higher standard than complaints filed in federal court by the Attorney General in Title VII civil actions.[7] *See* United States v. Gustin-Bacon Division, Certainteed Products Corp., 426 F.2d 539 (10th Cir. 1970). That a lay complainant initiating a conciliation procedure might be held to a more exacting pleading standard than the nation's highest legal officer in filing a suit for injunctive relief is too great an anomaly to be attributed to Congress.

## III.

### *Scope of the EEOC Investigation*

■ The District Court asserted that:

> The legislative history of the Act makes it clear that Congress intended to deny the Commission the broad investigatory powers of other federal agencies and to carefully circumscribe its authority of investigation.

Our reading of the legislative history does not support this conclusion but suggests, on the contrary, that the investigatory powers of the EEOC were intended to equal in scope those granted the National Labor Relations Board under the Taft-Hartley Act, 29 U.S.C. §§ 151 *et seq.,* 161.

---

6. EEOC investigations may be initiated either by a private charge of discrimination or by a Commissioner's charge filed by a single Commissioner who alleges that he has reasonable cause to believe that an employer, union, or employment agency has engaged in an unlawful employment practice. 42 U.S.C. § 2000e-5(a). Commissioner's charges are frequently used because employees who have informed the Commission of the existence of discriminatory policies are unwilling to file charges themselves for fear of retaliation.

7. A complaint filed by the Attorney General in a civil action alleging a pattern or practice of discrimination must set forth "facts pertaining to such pattern or practice." 42 U.S.C. § 2000e-6(a). Construing this language in *Gustin-Bacon, supra,* the Tenth Circuit rejected the argument that this language imposed any more rigid pleading standards than those imposed by the Federal Rules of Civil Procedure. The allegations of the complaint, upheld in that case, were no more specific than those of the charge here.

The scope of the investigatory powers of the EEOC is set forth in the following two sections of Title VII:

Section 709(a). In connection with any investigation of a charge filed under section 2000e–5 of this title, the Commission or its designated representative shall at all reasonable times have access to, for the purposes of examination, and the right to copy any evidence of any person being investigated or proceeded against that relates to unlawful employment practices covered by this subchapter and is relevant to the charge under investigation. 42 U.S.C. § 2000e–8(a).

Section 710(a). For the purposes of any investigation of a charge filed under the authority contained in section 2000e–5 of this title, the Commission shall have authority to examine witnesses under oath and to require the production of documentary evidence relevant or material to the charge under investigation. 42 U.S.C. § 2000e–9(a).

As passed by the House, section 709(a) used the clause "that relates to any matter under investigation or in question," for which the Senate substituted "that relates to unlawful employment practices covered by this title and is relevant to the charge under investigation." The original language, taken verbatim from the Taft-Hartley Act, 29 U.S.C. § 161(a), was intended by its authors to encompass the same powers granted the NLRB.[8]

Turning now to section 710, this provision underwent a more sweeping revision in the Senate. The House version would have incorporated by reference the provisions of sections 9 and 10 of the Federal Trade Commission Act, 15 U.S. C. §§ 49 and 50. The Senate substituted language as subsection 710(a) parallel to subsection 709(a) and spelled out in subsections 710(b) through 710(d) the means of enforcement of Commission Demands for Access to Evidence. The result was to narrow the Commission's powers by removing *criminal* penalties in connection with the subpoena power and denying the Commission power to compel incriminating evidence in exchange for grants of immunity.[9]

Graniteville further maintains that the language of the Senate amendments itself evidences an intent to restrict the scope of the subpoena powers afforded by the House version of Title VII. Spe-

---

8. The language of section 709 approved by the House was added to the House bill by an amendment whose intent was explained by its sponsors in these words:

Mr. Celler: The amendment changes the language to conform to the Taft-Hartley Act.

\*     \*     \*     \*     \*

Mr. Gill: Mr. Chairman, the gentleman from New York, the chairman of the Committee on the Judiciary, is exactly right. We have moved from the language that was a close approximation of the Fair Labor Standards Act to the language found in section 11, the investigation section, of the Taft-Hartley Law. 110 Cong.Rec. 2571–2572 (1964).

9. It was apparently these revisions that Senator Humphrey had in mind in making the remarks quoted by the District Court:

*The provisions for the investigative powers of the Commission have been entirely rewritten.* Section 710 now provides that the Commission, if it seeks to compel compliance with its demands for documents or for the testimony of witnesses, must first go to court and secure an order for compliance. The Commission may, however, formally demand certain documents and if the person upon whom the demand is served objects to the demand, he is required to go to court within 20 days or waive objections to a subsequent court order. *Section 710 narrows the powers originally given to the Commission in the House bill and already possessed by the Federal Trade Commission and the Federal Power Commission.* 110 Cong. Rec. 12724 (1964) (emphasized language quoted by District Court).

We do not agree that the emphasized language is directed to the substantive scope of the Commission's investigatory powers. The powers narrowed by the amendment were only those involving criminal sanctions for noncompliance and compelling of incriminating evidence.

cifically, it is argued from the change in language that

> the NLRB has the power to require the production of evidence that merely relates to any matter under investigation by the Board while the Commission is limited in its right to cause the production of evidence by the fact that such evidence must be relevant or material to the Charge under investigation.

We think the change in language was simply designed to emphasize the inability of the EEOC to undertake an investigation in the absence of a previously filed charge—a requirement already stipulated by the bill's sponsors, as is made abundantly clear by the statement of Senators Clark and Case as bipartisan floor managers for Title VII in the Senate.[10]   Congress sought to control mere "fishing expeditions" by requiring investigations to be preceded by the filing of a charge by a party claiming to be aggrieved or by a Commissioner with sufficient prior information to have reasonable cause to believe that a statutory violation had occurred.   The amendment makes clear not that the EEOC may not subpoena all evidence that "relates to any matter under investigation or in question," but that properly filed charges are the only "matters" which can be "under investigation or in question."

Aside from the language and legislative history of the investigatory powers provision of Title VII, the District Court reasoned that because the Commission's only tools of enforcement are voluntary conference, persuasion, and conciliation, it is not a regulatory body as the NLRB is and "should not be supposed to possess the same broad powers of investigation."   To the contrary, unlike the NLRB, which has the assistance of high-priced union and employer law-

yers, each anxious to prove the justice of his client's case, the EEOC was intended to carry the full burden of investigating minimally informative charges filed by unrepresented lay-complainants. It seems to us, rather, that the EEOC should be supposed to possess powers at least as broad as those granted the NLRB to enable the Commission to compensate for the absence of a documented legal brief from the charging party. We would align ourselves with the Third Circuit in concluding that

> [w]hile it is true that the National Labor Relations Board may make orders in respect to alleged unfair labor practices, we cannot consider this to be a basis for circumscribing the powers of investigation by the EEOC in order to develop a basis for conciliation.   International Brotherhood of Electrical Workers, Local Union No. 5 v. Equal Employment Opportunity Commission, 398 F.2d 248, 253 (3d Cir. 1968).

The only remaining question is whether the information sought by the EEOC in this case is relevant or material to the charge being investigated.   We disagree with the conclusion of the court that the EEOC investigation "exceeds the reasonable scope of its authority." The Commission, already provided with a computer list of all employees working in the Sibley Mill, sought the dates of hire for all employees hired since July 1, 1965, the job classification into which each employee was initially hired, and a key to the number code used in the computer list to identify department and job classification assignments.   Supplying the computer list with its code designations, while withholding the key, rendered that nominal compliance meaningless.   Viewing the question more broadly, the information sought is all highly relevant and material to a charge alleg-

---

10.  The Clark-Case Memorandum was submitted prior to the Senate amendment of sections 709 and 710 and stated in part: "It is important to note that the Commission's power to conduct an investigation can be exercised only after a specific charge has been filed in writing."   Memorandum of Senators Clark and Case, 110 Cong.Rec. 7212, 7214 (1964).

**42**

ing the existence of a discriminatory promotion policy and classification of jobs by race. Price's charge alleges the existence of at least plant-wide policies and the requested information would seem to contain very direct evidence of the existence or nonexistence of such policies.

Even had Price limited his charge to allegations of personal discrimination or departmental discrimination we would hesitate to characterize the desired information as irrelevant and immaterial. Evidence of plant-wide discrimination seems most relevant to a charge that a particular department adheres to a discriminatory policy or that particular action taken was racially motivated. We note with approval the interpretation of a leading commentator on Title VII:

> While the Commission's inquiry must be limited to evidence "relevant to the charge under investigation," an employer's policies with respect to, say, the promotion of Negroes are plainly relevant to, for example, a charge that he refused to hire someone because of his race. Sovern, Legal Restraints on Racial Discrimination in Employment 90 (1966).

And we agree wholeheartedly with the recent opinion of the Sixth Circuit in Blue Bell Boots, Inc. v. Equal Employment Opportunity Commission, 418 F.2d 355, 358 (6th Cir. 1969):

> We consider an employer's "pattern of action" relevant to the Commission's determination of whether there is reasonable cause to believe that the employer has practiced racial discrimination. [Citation] Discrimination on the basis of race is by definition class discrimination, [citations], and the existence of patterns of racial discrimination in job classifications or hiring situations other than those of the complainant may well justify an inference that the practices complained of here were motivated by racial factors.

> Moreover, evidence concerning employment practices other than those specifically charged by complainants

may properly be considered by the Commission in framing a remedy. Title VII of the Civil Rights Act of 1964 should not be construed narrowly, and the Commission may, in the public interest, provide relief which goes beyond the limited interests of the charging parties.

In the instant case, the EEOC Cross-Petition for Enforcement of its Demand should have been granted.

Reversed and remanded for further proceedings consistent with this opinion.

BOREMAN, Circuit Judge (dissenting):

## I. THE INVESTIGATORY POWERS OF THE EEOC

The investigatory powers of the Equal Employment Opportunity Commission are granted by §§ 709 and 710 of Title VII of the Civil Rights Act of 1964. 42 U.S.C. §§ 2000e et seq.:

> Section 709(a). In connection with any investigation of a charge filed under section 2000e–5 of this title, the Commission or its designated representative shall at all reasonable times have access to, for the purposes of examination, and the right to copy any evidence of any person being investigated or proceeded against that relates to unlawful employment practices covered by this subchapter and is relevant to the charge under investigation. [42 U.S.C. § 2000e–8(a).]

> Section 710(a). For the purposes of any investigation of a charge filed under the authority contained in section 2000e–5 of this title, the Commission shall have authority to examine witnesses under oath and to require the production of documentary evidence relevant or material to the charge under investigation. [42 U.S.C. § 2000e–9(a).]

The majority apparently holds that Congress intended that these sections give the EEOC investigatory powers equal in scope to those granted the National Labor Relations Board under the

Taft-Hartley Act, 29 U.S.C. §§ 151 et seq., 161. As evidence of such asserted intent, the majority opinion refers to legislative history showing that the House version of 709(a) conformed to the language of the Taft-Hartley Act giving the EEOC power to examine and copy evidence "that relates to any matter under investigation or in question." The majority merely notes, in passing, that the Senate substituted language for this clause which limits the Commission's right to require disclosure of evidence that is "relevant to the charge under investigation" and simply recognizes, without comment, that it was the Senate version which was finally passed by Congress.

The majority further shows that Section 710, as originally passed by the House, would have incorporated the provisions of Sections 9 and 10 of the Federal Trade Commission Act, 15 U.S.C. §§ 49 and 50, but that the Senate spelled out in subsections 710(b) through 710(d) the means of enforcement of demands for evidence by the Commission, with the result that these powers were narrowed.[1] With respect to the substantive scope of the Commission's investigatory powers, the majority once again merely notes in passing that the "Senate substituted language as subsection 710(a) parallel to subsection 709(a)." The language which the Senate substituted in subsection 710(a) limits the Commission's power to require the production of documentary evidence to that which is "relevant or material to the charge under investigation," and it was this language which was incorporated into the Act.

Legislative history regarding the House version of these subsections does not persuade me that 709(a) and 710(a)

give the EEOC any more power to conduct investigations than the language of these subsections plainly states; the intentions of the House are of minimal significance since it was the Senate version of both subsections which finally became law. Subsection 709(a) was revised by the Senate to require that evidence demanded be *relevant to the charge under investigation,* and subsection 710(a) was revised to require that evidence demanded be *relevant or material to the charge under investigation.* The language is plain and is clearly restrictive of the scope of the Commission's investigatory powers. It has been noted that "the statute leaves much to be desired in clarity and precision."[2] but the Senate amendments to 709(a) and 710(a), if they have meaning at all, reflect the concern of Congress that demands for evidence by overzealous investigators would at times be unreasonable, and the amendments were obviously designed as a check upon such investigations. *Cf.* Georgia Power Co. v. Equal Employment Opportunity Commission, 412 F.2d 462, 467–468 (5 Cir. 1969). To me, §§ 709(a) and 710(a) mean what they say, *i.e.,* that the Commission may demand and obtain only evidence which is *relevant to the charge,* and thus represent a significant restriction on the powers of the EEOC, as opposed to the powers of the NLRB. The majority's attempt to show that the language does not mean what it says, but "was simply designed to emphasize the inability of the EEOC to undertake an investigation in the absence of a previously filed charge" is unpersuasive since the filing of a charge as a prerequisite to an investigation is not only established in subsection 706(a) [42 U.S. C. § 2000e–5(a)], but is emphasized in

---

1. In footnote 9, the majority sets out certain language of Senator Humphrey and asserts that the district court used it improperly to demonstrate that the Senate amendment narrowed the substantive scope of the Commission's investigatory powers. The majority suggests that the Senator's remarks referred to these

changes in the means of enforcement. Assuming this interpretation to be correct, it does not follow that these powers were the only ones narrowed by the Senate.

2. Cunningham v. Litton Indus., 413 F.2d 887, 889 (9 Cir. 1969).

the opening clauses of both 709(a) and 710(a).

## II. THE PROPRIETY OF A HEARING

Taking into consideration the existence of this restriction on the scope of the investigatory powers of the EEOC as opposed to the powers of the NLRB, it becomes necessary to look to the posture of the case before the district court. The Commission had served Graniteville with a demand for (1) the key to a number code indicating the department and job classification assignments of all employees of the Sibley Mill as used in a computer list which already had been supplied; (2) a list showing the date of hire of all employees on the computer list hired subsequent to July 1, 1965; and (3) a list showing the job in which each employee on the list had been initially hired. Graniteville had given the Commission similar information with regard to the department in which Price had worked, but the Commission wanted this evidence with respect to *all the departments at the Sibley Mill*. Graniteville balked at this request, filed a Petition to Set Aside the Demand, and the EEOC cross-petitioned for enforcement. Thus, it was incumbent upon the district court to determine whether the information sought was within the scope of the Commission's investigatory power. To do so, it was necessary to refer to the charge because the statute expressly requires information sought to be relevant to the charge. The district court properly stated in its order:

> Congress explicitly gave those upon whom a demand for access to evidence has been served the right to petition to have the demand set aside. The question raised by that petition is whether the Commission has exceeded its statutory authority by the scope of its investigation. Since the Commission's sphere of permissible investigation is controlled by the relevancy of the information sought to the charge which has been lodged, the court must at least look to the charge to determine that which is relevant. The charge is the frame of reference which circumscribes the Commission's investigatory activities. Upon petition the court is obliged to determine what is charged and what is relevant.

The charge in this case was, however, couched in broad and general terms. The evidence demanded could well have appeared to the court below as possibly relevant to three of the four substantive allegations made: (1) that Negroes were discriminated against in promotion policies; (2) that Negroes were harassed, placed in fear of job loss, and subjected to conditions different from those of white employees; and (3) that Negroes were hired for traditionally Negro jobs. However, no *specific* facts upon which these charges were based were alleged, and Graniteville challenged the relevance of the demands for information with respect to these allegations. A hearing was ordered to determine these facts.[3] The majority holds that this hearing was improper and disregards the information there elicited. I conclude, however, that a hearing at this point would be perfectly proper as it would assure fairness to both parties[4] and permit a knowledgea-

---

3. The district court justified the hearing in the instant case as necessary to determine whether Price was "claiming to be aggrieved" within the meaning of the Act. I would agree with the majority that, from the charge alone, Price is clearly "claiming to be aggrieved." The nature of the hearing, however, was to determine specific instances, if any, of unlawful employment practices about which Price was complaining, which is the type of hearing which would be necessary to ascertain whether the information demanded was relevant to the charge.

4. Section 706(a), [42 U.S.C. § 2000e–5(a)] requires that a charge "[set] forth the facts upon which it is based." As the majority properly notes, however, a charge should not be held deficient because it lacks specificity. A lay complainant in an administrative proceeding should not

ble determination of the relevancy of the information demanded.

My brothers assert that the hearing below involved a "general inquiry into the sufficiency of the evidence" supporting the charge and that it required the EEOC to make a premature showing of reasonable cause to believe that the charge was true. I disagree. The majority's conclusion results from a failure to distinguish between an allegation of fact and a conclusion, and to analyze properly the contents of a charge.

Allegations of fact may be of two types—specific or general. The statement, "I was refused a promotion" is an allegation of fact in specific terms. The claim that "Negroes are refused promotions" is also an allegation of fact, but in the broadest form; it implies more than one specific occurrence, all of which may vary widely in nature and context.[5] The statement "Negroes are discriminated against because of race" is, on the other hand, a conclusion. Its truth depends upon judgment and reasoning and the application of law to given facts or allegations thereof.

A charge filed with the EEOC is, of necessity, a combination of allegations of fact, general and/or specific, and a conclusion drawn therefrom. The complaining party may allege certain facts which were manifestations of an unlawful (discriminatory) policy. Where, as here, the facts alleged are of a general and unspecified nature and are properly challenged as having no specific components to which the evidence demanded is relevant, a hearing to determine

more precisely the basis of the charge would not infringe upon the authority of the Commission to determine whether the allegations of fact were supported and whether there was reasonable cause to believe that the specific occurrences were the result of an unlawful and discriminatory employment policy.

The majority prudently states, "[S]ophisticated general policies and practices of discrimination are not susceptible to * * * precise delineation by a layman who is in no position to carry out a full-fledged investigation himself. * * * Charging parties * * * should not be called upon to specify the dates when raises should have been granted or when promotions were offered to whites but not to equally qualified blacks." However, fairness indicates, and the statutory language demands, that when challenged to do so the complaining party must show a reasonably specific basis in fact sufficient to establish the relevance of the information demanded. I am not persuaded that a hearing held for this purpose was error.

### III. THE HEARING BELOW

Price's testimony at the hearing in the district court does not support granting the Commission's demand for evidence in this case. Price had charged that Negroes were hired for traditionally Negro jobs. It would seem that this can be a charge of discriminatory hiring practices only in the implication that Negroes were not hired for traditionally "white" jobs, but Price had apparently

---

be held to strict pleading niceties (even though aided here by a Commission agent in preparing the charge). Nevertheless, this principle should not be used to destroy Graniteville's right, granted by Congress, to contest a demand for evidence on the ground that the information demanded is not related to violations with which it has been charged. When the demand is thus contested, and the allegations lack specificity, a hearing to determine precisely what is complained about would seem to be required.

5. In the instant case, there was merely a general factual allegation that Negroes

were denied promotions. Such denials could, of course, take place in many different contexts. For example, it is conceivable that all the denials of which Price was complaining had occurred in one department and were the result of discrimination by the head of that department, not the result of, or indicative of, plant-wide policy. If this were the case, the information demanded by the Commission with respect to the promotion records of other departments would not be relevant to the charge.

been hired for the only job for which he had applied and he did not allege any instances in which other Negroes were denied employment at Graniteville. Price also had charged that Negroes were harassed, placed in fear of job loss, and subjected to conditions different from those of white employees. However, the specifics to which he testified revealed the only harassment of which he was complaining was that company officials did not come to him to offer him a better job, his fear of losing his job arose because his supervisor would talk to him whenever he overslept and was late for work, and the only relevant "different condition" to which he could point was that Negroes were not promoted to supervisory positions at the plant. When questioned closely about his charge concerning Graniteville's promotional policies, Price's dissatisfaction appeared to more accurately involve alleged discriminatory practices in the vocational training programs offered by Graniteville [6] (therefore possibly supporting a demand for evidence concerning these programs had such evidence been demanded) rather than any denials of promotions to Negroes because of their race. On the basis of this testimony alone, I would be disposed to affirm the district court's granting of Graniteville's petition to set aside the Commission's demand. Other testimony given by Price, however, considered together with his affidavit submitted prior thereto,[7] indicates that there may have been additional specific facts by which he had been aggrieved which were not fully explored at the hearing. Counsel for the Commission,

6. Q. Two more questions, Mr. Price. What specific job did you feel you had some kind of right to even though you didn't ask, and were qualified to hold?

   A. Well, I would like to have have [sic] the training well enough to have been a loom fixer, or I would like to have had the training well enough to have been a foreman. This hard-duty work I was doing, I would like to have had something else.

   Q. This work you were doing, are you saying you already had the proper training at that time, or you would like to have had it?

   A. I would liked to have had the training. That is where most of the whites get their's. They come in on a training job. They don't come in and do the type work I was doing, and I felt I was more qualified for being promoted with knowing the job than pulling a man out of the streets for the job.

   Q. Do you know of your own knowledge, Mr. Price, whether or not those whites asked for the training?

   A. I have no way of knowing whether they asked.

   Q. You know there were vocational training programs available?

   A. I didn't know that.

   *       *       *       *       *

   THE COURT: * * * You said men were hired off the streets to better jobs than you had. What jobs are you talking about?

   THE WITNESS: Well, jobs like loom fixers. Jobs that had different pay,

higher salaried jobs, and it seems as if the whites had the better paying jobs than the Negroes.

   THE COURT: Well, did you investigate to see whether or not they had more skill to do the job?

   THE COURT [sic]: No, I didn't. I felt this way about it, I felt that they had to go through a process of training, and I was capable of learning how to fix just as well as they were.

   THE COURT: But you didn't go through any training?

   THE WITNESS: I did not.

   THE COURT: Did you ask for any training?

   THE WITNESS: I did not ask for any training.

7. In addition to Price's testimony at the hearing, the evidence before the district judge included the original letter sent by Price (in conjunction with an individual not a party here) to the EEOC, Price's sworn affidavit, and the formal charge prepared on an EEOC form. The Commission chose to support its demand for evidence on the formal charge alone. Clearly, however, if the hearing was proper in this case, the testimony of Price, and his affidavit, which was written by an agent of the Commission but signed and sworn to by Price, should be considered. The original letter, being unsworn, should not be considered for the purposes of this case. This is true despite case law to the effect that an original letter, not under oath, is sufficient to meet the statutory requirement [42 U.S.C. § 2000e–5(d)]

although given an opportunity to cross-examine Price, did not question him in depth because the district court had erroneously stated the purpose of the hearing to be to determine whether Price personally was "claiming to be aggrieved" within the meaning of the Act (see footnote 3). Yielding to substantial authority, I would agree with the majority that "a charging party may even be aggrieved by employment practices to which he is not immediately subject." It is clear that due to the confusion in the lower court regarding the purpose of the hearing, Price was not given adequate opportunity to testify to possibly discriminatory employment practices to which he was not immediately subject.

For the reasons stated above, I would remand to the district court with instructions to further investigate the precise nature of the factual basis of Price's charge.

I, therefore, respectfully submit a statement of my views and the points of my disagreement with the majority.

that a complainant file the charge within 90 days after the alleged discriminatory practice has occurred. Blue Bell Boots, Inc. v. Equal Employment Opportunity Commission, 418 F.2d 355 (6 Cir. 1969); Weeks v. Southern Bell Tel. & Tel. Co., 408 F.2d 228 (5 Cir. 1969); *see* Choate v.

Caterpillar Tractor Co., 402 F.2d 357 (7 Cir. 1968). The sufficiency of an unsworn charge with respect to this procedural requirement is unrelated to the instant case where the *substance* of the charge is at issue.