**EQUAL EMPLOYMENT OPPORTUNITY COMMISSION**

v.

**GREYHOUND LINES, INC., a California Corporation and Amalgamated Transit Union, AFL–CIO, Division 1063.**

Civ. A. No. 75–592.

United States District Court, W. D. Pennsylvania.

March 30, 1976.

98

Martin K. Denis, Asst. Regional Atty., E. E. O. C., Philadelphia Regional Litigation Center, Philadelphia, Pa., for plaintiff.

James J. Restivo, Jr., Pittsburgh, Pa., for defendant.

## OPINION

ROSENBERG, District Judge.

The matter before me now is based on the motion of the defendant, Greyhound Lines, Inc. (Greyhound) to dismiss the complaint filed by the plaintiff, the Equal Employment Opportunity Commission (EEOC). Jurisdiction is founded in § 706(f)(1), (3) and (g) of Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. § 2000e et seq. The plaintiff alleges that this action was instituted after all conditions precedent were fulfilled.

As to the defendant, Greyhound, the plaintiff alleges that since July 2, 1965, through the present, it has intentionally engaged in unlawful employment practices against its employees based upon race and sex in violation of Title VII, which includes but is not limited to: (1) the policy, practice and system of hiring which limits job opportunity to blacks and females respectively; and (2) the promotion and assignment practice which result in a disproportionately high number of blacks and females assigned to more menial and low-paying jobs with less opportunity for advancement than created for other whites and males, respectively.

As to the defendant, Amalgamated Transit Union, AFL–CIO, Division 1063 (Division 1063), the plaintiff alleges that since July 2, 1965 and through the present, it has intentionally engaged in discriminatory employment practices against its members in violation of Title VII, which includes but is not limited to limiting job opportunities on the basis of sex by acquiescence and cooperation with the defendant, Greyhound. The plaintiff seeks: (1) a permanent injunction enjoining the defendants from any further employment discrimination based on race and sex; (2) an order directing the defendants to initiate affirmative policies and actions providing equal treatment for blacks and females to eradicate prior discrimination; (3) an order directing the defendants to make whole those adversely affected by past discriminatory practices including but not limited to awards of back pay, compensation, restitution with interest or other relief deemed appropriate; and (4) to be awarded costs.

The defendant Greyhound moves to dismiss the complaint averring that (1) it goes beyond the charge investigated in that it alleges racial discrimination where the original charging party only alleged sex discrimination; (2) it goes beyond the charge investigated in that it alleges sex discrimination in all of the defendant's employment practices where the original charging party only alleged discrimination in the defendant's seniority provision relating to job bidding; (3) if the original charging party, Marlene Sabolovic, lacked standing to complain of racial discrimination and did not, the plaintiff lacks standing also; (4) the death of Marlene Sabolovic, the original charging party, who sought only prospective relief renders the action moot; and

(5) the plaintiff did not use conciliation as required in Title VII to settle the issues in that after an agreement was had it refused to settle the matter in a manner other than by a formal consent decree. The defendant moves in the alternative to strike all allegations in the complaint alleging race discrimination and those alleging sex discrimination in job practices other than seniority for job bidding.

Much of the defendant's argument is that the complaint filed is much more extensive in its allegations than the charge that was filed with the plaintiff, EEOC, by the late Marlene Sabolovic. The defendant attempts to compare the process which empowers the EEOC to bring the present action to a complaint in any civil action and a subsequent trial on the issues raised, and requests me to further concentrate solely on the relationship between charge and complaint in a Title VII action disregarding any results from a thorough investigation by the EEOC.

In *Sanchez v. Standard Brands, Inc.,* 431 F.2d 455, C.A.5, 1970, the scope of the complaint was held not to be limited to the scope of the charge but rather to "the 'scope' of the EEOC investigation which can reasonably be expected to grow out of the charge of discrimination." (at page 466) It went on to say that a charge filed with the EEOC is by no means a preliminary to a complaint in federal court because its *only* purpose is to start the machinery of the EEOC in a full and effective investigation.

In *Sanchez, supra,* at page 466, the Court held:

> " . . . Once a charge has been filed, the Commission carries out its investigatory function and attempts to obtain voluntary compliance with the law. Only if the EEOC *fails* to achieve voluntary compliance will the matter ever become the subject of court action. Thus it is obvious that the civil action is much more intimately related to the EEOC investigation than to the words of the charge which originally triggered the investigation.

Within this statutory scheme, it is only logical to limit the permissible scope of the civil action to the scope of the EEOC investigation which can reasonably be expected to grow out of the charge of discrimination.

A more exacting rule would be destructive of the logic of the statutory scheme, for it would impede the ability of the Commission to effect voluntary compliance. If an alleged discriminator knew that a particular issue which was the subject of EEOC conciliation efforts could never be the subject of a civil action, his incentive toward voluntary compliance would be lessened."

See also, *King v. Georgia Power Co.,* 295 F.Supp. 943 (D.C.Ga.1968)

In *Equal Employment Opportunity Commission v. E. I. Dupont de Nemours and Co., E. T. C.,* 373 F.Supp. 1321 (D.C. Del.1974) considerations are advanced in support of the EEOC's broad complaint. The court held as follows:

> "The doctrine that the Commission may take the charge as a starting point and include in its deliberations all facts developed in the course of a reasonable investigation of that charge is supported by a number of considerations. First, in the overall framework of Title VII, an individual charge operates not so much as a formal accusatory instrument like an indictment, but, rather, as the first step in an investigatory process that must be free to define relevant areas of inquiry as it unfolds. To mandate blinders for Commission investigators or to require that they pursue any additional discrimination disclosed by their investigation in a separate Commissioner's charge would be to sanction a waste of valuable and limited resources. Second, the charge is generally lay-drawn, often by an individual of modest intellectual attainment whose powers of articulation are limited. *Jenkins v. United Gas Corp.,* 400 F.2d 28, 30 (5th Cir. 1968). The precise language of the charge, therefore, provides less guidance for subsequent proceedings than the general character of

the grievances to which the charge alludes. Third, the individual claiming to be aggrieved often perceives only dimly the nature and cause of the discrimination he believes he has experienced. *Sanchez v. Standard Brands,* supra, 431 F.2d at 462–463. The limited grievance he asserts may merely symptomize a deeper pattern of discrimination which only a trained investigator can recognize. Fourth, employment discrimination, almost by definition, is *class* discrimination, both in the factors that produce it and the consequences which it leaves in its wake. *Blue Bell Boots, Inc. v. EEOC,* 438 F.2d 32 (6th Cir. 1971). The Commission's power to redress individual grievances, then, implies the power to correct the underlying conditions responsible for those grievances, as well as the power to seek relief for other members of the grievant's class." (at page 1335).

The realities of employment discrimination uncovered by a thorough investigation of the EEOC should in no way be suppressed by a limitation which thwarts a Title VII action. If during their investigation into a charge of sex discrimination in the defendant Greyhound's procedure for job bidding, the EEOC investigators were not allowed to proceed in a manner as to arrive at a determination which would ascertain motives for certain personnel programs, a true determination would never be reached and not only the individual charging party but the public would suffer greatly.

The importance of the investigation process itself must be emphasized as the courts have above stated and not the exact similarity of charge and complaint. An effective EEOC can only operate to carry out congressional intent if it is reasonably allowed to bring employment discrimination to the surface. This is not to say that the EEOC is empowered to initiate "witch hunts" or "fishing expeditions" without first complying with statutory requirements. In this action, a charge was filed, the EEOC found reasonably related discriminatory practices

across the board and conciliation was attempted before suit was filed.

The Fourth Circuit Court of Appeals in *Equal Employment Opportunity Commission v. General Electric Company,* 532 F.2d 359, 1976, recently decided the precise question involved here and held:

"We are of the opinion that both the District Court and the defendant attach too much importance to the charges as filed and fail to give proper effect to the Amendments of 1972 to Title VII. While it is true 'the EEOC is without jurisdiction to proceed [in any case] in the absence of a valid charge, * * * [t]he purpose of the charge under section 706 is only to initiate the EEOC investigation,' to 'trigger the investigatory and conciliatory procedures of the EEOC.' The charge is not to be treated as a common-law pleading that strictly cabins the investigation that results thereform (sic), or the reasonable cause determination that may be rested on that investigation. The charge merely provides the EEOC with 'a jurisdictional springboard to investigate whether the employer is engaged in any discriminatory practices;' and that investigation may well 'disclose, as in this instance, illegal practices other than those listed in the charge' and provide a basis for a reasonable cause determination with respect to those practices. The charge has been described, also, 'as a starting point' for a reasonable investigation by the Commission, which may then 'include in its deliberations [and base its determination on] *all facts developed in the course of a reasonable investigation of that charge* * * *.' (Italics added) The EEOC has the right during the investigation to compel the production of any material or evidence that has relevancy to any claim made in the charge. If the EEOC uncovers during that investigation facts which support a charge of another discrimination than that in the filed charge, it is neither obliged to cast a blind eye over

such discrimination nor to sever those facts and the discrimination so shown from the investigation in process and file a Commissioner's charge thereon, thereby beginning again a repetitive investigation of the same facts already developed in the ongoing investigation. To cast a blanket over such facts in the ongoing proceedings would be a violation of the EEOC's statutory obligation in the area of employment discrimination. To require a new charge based on those facts and to begin again the administrative process thereon, would result in an inexcusable waste of valuable administrative resources and an intolerable delay in the enforcement of rights which require a 'timely and effective remedy.' That procedure, as the Supreme Court said in a somewhat similar context in *Love v. Pullman Co.* (1972) 404 U.S. 522, 526, 92 S.Ct. 616, 619, 30 L.Ed.2d 679 'would serve no purpose other than the creation of an additional procedural technicality.' It would be simply a useless exercise in technical nicety. *So long as the new discrimination arises out of the reasonable investigation of the charge filed,* it can be the subject of a 'reasonable cause' determination, to be followed by an offer by the Commission of conciliation, and, if conciliation fails, by a civil suit, without the filing of a new charge on such claim of discrimination. In other words, the original charge is sufficient to support action by the EEOC as well as a civil suit under the Act for *any discrimination stated in the charge itself or developed in the course of a reasonable investigation of that charge,* provided such discrimination was included in the reasonable cause determination of the EEOC and was followed by compliance with the conciliation procedures fixed in the Act. This, after all, is substantially what we held in *Graniteville Co. v. Equal Employ. Op. Com'n,* supra [(4th Cir.) 438 F.2d 32]. We said there that 'evidence [developed in the investigation] concerning employment practices other than those specifically charged by complainants

may properly be considered by the Commission in framing a remedy. Title VII of the Civil Rights Act of 1964 should not be construed narrowly, and the Commission may, in the public interest, provide relief which goes beyond the limited interests of the charging parties.' " (Footnotes omitted)

█ At this point, there are no facts presented to show that allegations in the complaint were *not* a result of the EEOC investigation and on that issue the complaint stands.

█ Because the complaint will stand, the death of the original charging party, Marlene Sabolovic will not render the action moot. First, the EEOC can bring a civil suit under Title VII, 42 U.S.C. § 2000e–5(f)(1) not only to vindicate rights of the individual but also the public. *EEOC v. General Electric, supra.* Legislative history indicates Congressional intent in reaffirming the EEOC with public interest.

"Despite the commitment of Congress to the goal of equal employment opportunity for all our citizens, the machinery created by the Civil Rights Act of 1964 is not adequate.

Despite the progress which has been made since the passage of the Civil Rights Act of 1964, discrimination against minorities and women continues. The persistence of discrimination, and its detrimental effects require a reaffirmation of our national policy of equal opportunity in employment. It is essential that seven years after the passage of the Civil Rights Act of 1964, effective enforcement procedures be provided the Equal Employment Opportunity Commission to strengthen its efforts to reduce discrimination in employment." H.Rep. 92–238, 2 U.S. Code Cong. & Admin.News 1972, pp. 2137, 2139.

See also, *Equal Employment Opportunity Commission v. Kimberly-Clark Corporation,* 511 F.2d 1352, C.A. 6, 1975; *EEOC v. Eagle Iron Works,* 367 F.Supp. 817 (D.C.Iowa, 1973).

Secondly, the complaint goes beyond what Sabolovic asked for in her original charge. While she requested prospective relief, the EEOC has through its investigation alleged more related offenses and prayed for more relief "including but not limited to providing back pay, financial compensation and restitution with interest in an amount to be proved at trial and other affirmative relief necessary to eradicate the effects of their lawful employment practices."

The defendant Greyhound finally argues that the complaint be dismissed for failure of the plaintiff to properly use conciliation as required by Title VII to settle the case. Title VII, 42 U.S.C. § 2000e–5(b) requires that, "If the Commission determines after such investigation that there is reasonable cause to believe that the charge is true, the Commission shall endeavor to eliminate any such alleged unlawful employment practice by informal methods of conference, conciliation, and persuasion."

The question here is not whether or not conciliation was had, but whether or not it was sufficient to comply with Title VII. However, Title VII does not define or require a standard conciliation process. Furthermore, "If within thirty days after a charge is filed with the Commission or within thirty days after expiration of any period of reference under subsection (c) or (d) of this section, the Commission has been unable to secure from the respondent a conciliation agreement *acceptable to the Commission,* the Commission may bring a civil action against any respondent . . ." 42 U.S.C. § 2000e–5(f)(1) (Emphasis added).

In *Kendler v. Wirtz,* 388 F.2d 381, C.A. 3, 1968, the Court held:

"Assuming standing to sue, the scope of permissible review is limited. A mere difference of judgment between a person disadvantageously affected by agency action and the responsible head of the agency over the merits of particular administration action as a means of achieving a legislative objective, when Congress has assigned authority to make and act upon such de-

terminations to the agency, is not judicially reviewable. *Panama Canal Co. v. Grace Line, Inc.,* 1958, 356 U.S. 309, 78 S.Ct. 752, 2 L.Ed.2d 788; *United States v. Carmack,* 1946, 329 U.S. 230, 67 S.Ct. 252, 91 L.Ed. 209; *Adams v. Nagle,* 1938, 303 U.S. 532, 58 S.Ct. 687, 82 L.Ed. 999; *Williamsport Wire Rope Co. v. United States,* 1928, 277 U.S. 551, 48 S.Ct. 587, 72 L.Ed. 985."

 It is enough that EEOC attempted to conciliate this matter before the complaint was filed. Both parties submitted affidavits which did not contest this as an issue.

Accordingly, the motion of the defendant Greyhound to dismiss the complaint will be denied.